UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TAMARA GLOVER,

*Plaintiff*,

v.

CAROLYN GRIMALDI, ESQ., MINDY
JENG, NEW YORK STATE UNIFIED
COURT SYSTEM, ROSEMARY
MARTINEZ-BORGES, SCOTT MURPHY,
KEITH MILLER, NANCY BARRY, LINDA
DUNLAP-MILLER, JENNIFER DILALLO,
JUSTIN BARRY, SHAWN KERBY, *and*
DAN WEITZ,

*Defendants*.

No. 23-CV-5019 (KMK)

OPINION & ORDER

---

Appearances:

Tamara Glover
Middletown, NY
*Pro se Plaintiff*

Stephanie Costa, Esq.
Office of the Attorney General
Albany, NY
*Counsel for Defendants Carolyn Grimaldi, Esq., Mindy Jeng, Rosemary Martinez-Borges, Scott
Murphy, Keith Miller, Nancy Barry, Linda Dunlap-Miller, Jennifer DiLallo, Justin Barry, Shawn
Kerby, and Dan Weitz*

Michael John Siudzinski, Esq.
Robyn Leigh Rothman, Esq.
New York State Office of Court Administration
New York, NY
*Counsel for New York State Unified Court System*

KENNETH M. KARAS, United States District Judge:

Tamara Glover ("Plaintiff"), proceeding pro se, brings this Action against Carolyn

Grimaldi, Esq., Mindy Jeng, Rosemary Martinez-Borges, Scott Murphy, Keith Miller, Nancy

Barry, Linda Dunlap-Miller, Jennifer DiLallo, Justin Barry, Shawn Kerby, and Dan Weitz (collectively, "Individual Defendants"), and the New York Unified Court System ("UCS") (together with Individual Defendants, "Defendants"), alleging violations of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq.; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654.; the Free Exercise Clause of the First Amendment; and the Equal Protection Clause of the Fourteenth Amendment; and retaliation and discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981.  (*See generally* Second Am. Compl. ("SAC") (Dkt. No. 54).)  Before the Court are Motions to Dismiss (the "Motions") by UCS, (*see* Not. of Mot. (Dkt. No. 55)), and by Individual Defendants, (*see* Not. of Mot. (Dkt. No. 58)).  For the reasons below, Defendants' Motions are granted.

## I.  Background

### A.  Materials Considered

"'When considering a motion to dismiss, the Court's review is confined to the pleadings themselves,' because 'to go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to Rule 56.'"  *Watson v. New York*, No. 22-CV-9613, 2023 WL 6200979, at *1 (S.D.N.Y. Sept. 22, 2023) (alterations adopted) (quoting *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002)).  "Nevertheless, the Court's consideration of documents attached to, or incorporated by reference in the Complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment."  *Id.*; *see also Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (explaining that "when ruling on Rule 12(b)(6) motions to dismiss," courts may "consider the complaint in its entirety . . ., documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" (internal quotation marks

and citation omitted)); *Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken.'" (quoting *Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993))).

Additionally, when reviewing a complaint submitted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics and citation omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks and citation omitted), and "[plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)). The Court may take judicial notice of "any document that is not attached or incorporated by reference 'where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.'" *Kistler v. Stanley Black & Decker, Inc.*, No. 22-CV-966, 2024 WL 3292543, at *5 (D. Conn. July 3, 2024) (quoting *Chambers*, 282 F.3d at 153). To be integral to the complaint, "the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the

documents in framing the complaint." *Id.* (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010)).

UCS attaches a number of documents to its briefing, including Plaintiff's original religious objection to UCS' vaccine mandate, (Decl. of Michael J. Siudzinski ("Siudzinski Decl."), Ex. 2 ("Pl's Original Obj.") (Dkt. No. 56-2)), Plaintiff's November 2021 response to UCS' request for additional information that includes UCS' supplemental form, (*id.*, Ex. 4 ("Pl's Suppl. Form") (Dkt. No. 56-4)), and Plaintiff's EEOC charge, (*id.*, Ex. 6 ("EEOC Charge") (Dkt. No. 56-6)).  The Court may properly take judicial notice of the EEOC charge because it is a public document that is part of a relevant administrative proceeding.  *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 438 (S.D.N.Y. 2023) (citing *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010)); *see also Kouakou v. Fideliscare N.Y.*, 920 F. Supp. 2d 391, 394 n.1 (S.D.N.Y. 2012) ("Because the EEOC [c]harge is part of an administrative proceeding, the [c]ourt may take judicial notice of it without converting [the] [d]efendant's motion into a motion for summary judgment.").  As for Plaintiff's original objection and November 2021 supplemental form, the Court may take judicial notice because the documents are integral to the Second Amended Complaint—Plaintiff clearly had notice of them because she drafted the documents in question, *see Collins v. City of New York*, 156 F. Supp. 3d 448, 454 n.4 (S.D.N.Y. 2016) (noting that plaintiff had notice of a document because she wrote it), and she relied upon them in drafting the Second Amended Complaint, (*see* SAC ¶ 15–18 (indicating that Plaintiff submitted her original objection to UCS); *id.* ¶¶ 18–19 (indicating that Plaintiff submitted a response to UCS' request for additional information and that her response was considered and rejected)).  Accordingly, the Court will consider these documents in its analysis below.

B. Factual Background

The following facts are drawn from the Second and Third Amended Complaints and are assumed to be true for the purpose of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).[1]

Plaintiff "is a devout Christian who holds sincere beliefs that prohibit her from subjecting a healthy body to vaccines." (SAC ¶ 6.) On January 26, 2004, Plaintiff was hired by UCS as a Court Officer. (*Id.* ¶ 9). At some point between her hiring and initiating this Action, Plaintiff was promoted to Senior Court Clerk. (*Id.*)

1. UCS Vaccine Mandate

From October 2020 to January 19, 2021, Plaintiff was granted medical leave to work from home. (TAC ¶ 13.) In late January 2021, Plaintiff was ordered to report to work physically, which she did. (*Id.*¶ 20.) Other employees, including another Senior Clerk and Judge Jenny Rivera of the New York Court of Appeals, were permitted to work remotely during this time. (*Id.* ¶¶ 22–23.) In response to the COVID-19 pandemic, on or about August 25, 2021,

---

[1] In her Opposition, Plaintiff makes additional factual allegations in the form of her proposed Third Amended Complaint and appended exhibits. (*See* Pl's Opp., Ex. 1 ("TAC") (Dkt. No. 74) at 11–31.) It is true that the Court's "mandate to read the papers of pro se litigants generously makes it appropriate to consider [a] plaintiff's additional materials, such as [the] opposition memorandum." *Williams v. Barometre*, No. 20-CV-7644, 2022 WL 903068, at *2 n.4 (S.D.N.Y. Mar. 28, 2022) (quoting *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (citing *Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987))); *see also Veras v. Jacobson*, No. 18-CV-6724, 2020 WL 5659551, at *1 n.1 (S.D.N.Y. Sept. 23, 2020) ("The Court properly considers factual allegations contained in [the] [p]laintiff's opposition papers and other materials submitted by [the] [p]laintiff to the extent that those allegations are consistent with the Amended Complaint."), *reconsideration denied*, 2020 WL 6694410 (S.D.N.Y. Nov. 13, 2020); *Norman v. Mount Vernon Hosp.*, No. 17-CV-9174, 2020 WL 4432063, at *1 (S.D.N.Y. July 31, 2020) (same). Accordingly, the Court will consider factual allegations raised by Plaintiff in Opposition and in her Third Amended Complaint.

UCS adopted a mandatory vaccination policy that required all employees to be vaccinated by September 27, 2021, unless they received an exemption on medical or religious grounds. (SAC ¶ 10.) If an employee requested an exemption, they were obligated to fill out an application, including an affidavit of religious objection and personal statement, and submit the application for review by the UCS Vaccination Exemption Review Committee (the "Committee").[2] (*Id.* ¶ 12.) Employees were required to aver that the vaccination was contrary to a sincerely held religious belief, that their objection was not solely based on grounds of personal concern, preference, or beliefs, inconvenience, or intellectual belief or philosophy, and that they were willing to comply with the requirements of the exemption program. (*Id.* ¶¶ 13–14.) Exemption applications had to be submitted by September 27, 2021. (*Id.* ¶ 15.)

### 2. Plaintiff's Exemption Request

Plaintiff submitted a request seeking exemption from mandatory vaccination based on her religious beliefs. (*Id.* ¶ 17.) On November 15, 2021, Plaintiff received a letter stating that her request had been reviewed and required additional information, (*id.* ¶¶ 16–19), which she refused to provide in her November 29, 2021, response, (*see generally* Pl's Suppl. Form). Plaintiff received an email on January 7, 2022, informing her that she had 10 days to receive the COVID-19 vaccine. (SAC ¶ 19.) On January 12, 2022, Plaintiff received a call from First Deputy Chief Clerk Esther Kelly informing her that her exemption request was denied. (*Id.*) Plaintiff submitted at some point a "vaccine deferral request from her doctor for COVID

---

[2] Individual Defendants Scott Murphy, Rosemary Martinez-Borges, Linda Dunlap-Miller, Shawn Kerby, Dan Weitz, Nancy J. Barry, Justin Barry, Jennifer DiLallo, and Keith Miller were, at the relevant time, members of the Committee. (*See* Mem. in Supp. of Individual Defs' Mot. ("Indiv. Defs' Mem.") (Dkt. No. 61) 1.) Individual Defendants Carolyn Grimaldi and Mindy Jeng were, at the relevant time, employed by the New York State Office of Court Administration, the administrative office of UCS. (*See id.*)

convalesce[nce]." (*Id.* ¶ 20.) On January 31, 2022, Plaintiff received an email from "Defendant Ming" informing her that, "[p]ursuant to UCS policy, the Committee's decisions are final and not subject to review by an office in the UCS." (TAC ¶ 18.) Plaintiff also "made several appeal and reconsideration requests which were all denied." (SAC ¶ 21.) On January 31, 2022, Plaintiff received a letter from UCS "deeming her unfit for service and barring her from her place of employment." (*Id.* ¶ 22.) Around July 2022, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and received a right to sue notice around March 2023. (*See id.* ¶ 22; EEOC Charge at 1–2.)

On February 4, 2022, Plaintiff submitted a reconsideration request. (TAC ¶ 36; *see also id.*, Ex. A ("Feb. 2022 Request") (Dkt. No. 74 at ECF 32–49).) Plaintiff requested that Defendants Jeng and Grimaldi "reconsider the January 18, 2022, and January 26, 2022, denials of [her] request for an exemption." (Feb. 2022 Request at ECF 33.) Plaintiff stated that the vaccine requirement "violates [her] First Amendment right to freedom of religion because as a Christian, [she] cannot be vaccinated with a vaccine created from abortion-derived fetal cell lines, and each of the three COVID vaccines use such fetal cells." (*Id.* at ECF 34, 36–38.) Plaintiff also argued that UCS' exemption application violated HIPAA and illegally mandated her to disclose personal medical information, (*see id.* at ECF 34, 36), and that the vaccination mandate violated Plaintiff's substantive due process rights, (*see id.* at ECF 38). That same day, "Defendant Ming" informed Plaintiff that "the Vaccine Exemption Review Committee is neither reconsidering any of their decisions nor taking any appeals." (TAC ¶ 42.)

On April 4, 2022, Plaintiff received the COVID-19 vaccine, claiming that she did so "under duress" because she was "[u]nable to maintain herself without the income from her job." (SAC ¶ 28.) Since returning to work with UCS, Plaintiff alleges that she has faced "continual

discrimination and harassment such as rude comments and unfair work assignments." (*Id.* ¶ 29.) For example, one supervisor allegedly commented that the vaccine was used to "punish" and another commented that he "doesn't know who [Plaintiff] prayed to" in connection with a leave request. (*Id.*) Plaintiff also alleged that she received work assignments that are more demanding than what Plaintiff experienced in the past. (*Id.* ¶ 30.)

The vaccine mandate ended on February 17, 2023. *See Mora v. New York State Unified Court Sys.*, No. 22-CV-10322, 2023 WL 6126486, at *5 (S.D.N.Y. Sept. 19, 2023) (noting that the vaccine mandate was repealed on February 17, 2023), *appeal pending*, No. 23-7231 (2d Cir. Oct. 2, 2023); *see also Evans v. N.Y.C. Health & Hosps. Corp.*, No. 21-CV-10378, 2023 WL 5920189, at *2 n.3 (S.D.N.Y. Aug. 7, 2023) (taking judicial notice of the vaccine mandate and the regulation enacting that mandate (citing *Marciano v. de Blasio*, 589 F. Supp. 3d 423, 428 n.5 (S.D.N.Y. 2022), *appeal dismissed*, 2023 WL 3477119 (2d Cir. May 16, 2023))), *report and recommendation adopted*, 2023 WL 5561145 (S.D.N.Y. Aug. 29, 2023).

B.  Procedural Background

Plaintiff initiated this Action on June 14, 2023. (*See* Compl. (Dkt. No. 1).) In the original Complaint, Plaintiff included 10 unidentified "John Doe" defendants, who Defendants later identified, (*see* Dkt. No. 8), leading Plaintiff to file an Amended Complaint on November 2, 2023, (*see* Dkt. No. 9). On December 4, 2023, the Court set a briefing schedule on a motion to dismiss. (Dkt. No. 23.) On January 9, 2024, the Court gave Plaintiff leave to file a Second Amended Complaint and set an updated briefing schedule. (Dkt. No. 29.) On March 11, 2024, Plaintiff belatedly filed the Second Amended Complaint. (*See* SAC.)

On March 26, 2024, Defendants moved to dismiss the Second Amended Complaint. (*See* Mem. in Supp. of UCS' Mot. ("UCS Mem.") (Dkt. No. 57); Indiv. Defs' Mem.) After an

extension, (*see* Dkt. No. 68), Plaintiff moved to file a Third Amended Complaint, (*see* Dkt. No. 70).  The Court denied Plaintiff's motion, noting that Defendants' Motions were pending and that Plaintiff could, in Opposition, explain how the Third Amended Complaint would cure defects in the Second Amended Complaint.  (*See* Dkt. No. 73 at 4.)  Plaintiff then filed her Opposition to Defendants' Motions on July 18, 2024.  (Dkt. No. 74.)  Defendants timely replied.  (*See* Reply in Supp. of UCS' Mot. ("UCS Reply") (Dkt. No. 78); Reply in Supp. of Individual Defs' Mot. ("Indiv. Defs' Reply") (Dkt. No. 80).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if

a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[]

complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

complaint states a plausible claim for relief will . . . be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense.  But where the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration

adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at

678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading

regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with

nothing more than conclusions.").

     "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.*

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a

district court must confine its consideration to facts stated on the face of the complaint, in

documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d

99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v.*

*Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

Plaintiff has explicitly abandoned her RFRA and FMLA claims.  (*See* Pl's Opp. 2.)[3]  In

Opposition, Plaintiff refers repeatedly to her proposed Third Amended Complaint, which she

appends to her briefing.  For the sake of clarity, the Court will first address Defendants' Motions

as they relate to the Second Amended Complaint, then discuss whether the proposed Third

Amended Complaint addresses any defects of the Second Amended Complaint such that Plaintiff

should be granted leave to amend.

UCS moves to dismiss Plaintiff's Free Exercise and Equal Protection claims on the

ground that UCS is not liable under 42 U.S.C. § 1983.  (*See* UCS Mem. 7–8.)  Individual

Defendants move to dismiss (1) claims brought pursuant to Section 1983 on the grounds of

Eleventh Amendment immunity, (*see* Indiv. Defs' Mem. 9–13), (2) Plaintiff's Free Exercise

claim on the ground Plaintiff fails to allege that UCS' vaccination policy was applied

unreasonably to her, (*see id.* 14–17), and (3) Plaintiff's Equal Protection claim on the grounds

she fails to carry her prima facie burden, (*see id.* 17–21).  Finally, Defendants move to dismiss

Plaintiff's Title VII claims of discrimination, retaliation, and failure to accommodate on the

ground that Plaintiff has failed to carry her prima facie burden.  (*See* UCS Mem. 9–16; Indiv.

Defs' Mem. 21.)  The Court addresses these arguments in turn.

---

[3] Claims are abandoned where a plaintiff fails to respond to a defendant's argument in opposition.  *See Matos v. Discovery Commc'ns, LLC*, 750 F. Supp. 3d 307, 326–27 (S.D.N.Y. 2024); *see also Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 807 (S.D.N.Y. 2021) ("A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (alterations and citation omitted)); *Laface v. E. Suffolk BOCES*, No. 18-CV-1314, 2019 WL 1959489, at *8 (E.D.N.Y. May 2, 2019) ("In the Second Circuit, a plaintiff's failure to respond to contentions raised in a motion to dismiss constitute[s] an abandonment of those claims." (alteration and quotation marks omitted) (collecting cases)).

1.  Free Exercise Claim

Plaintiff's Second Amended Complaint alleges a violation of the Free Exercise Clause to the extent that USC's vaccine mandate was "a facially neutral statute that was adopted with a discriminatory intent and applied with discriminatory effect . . . [or] enforced in a discriminatory manner."  (SAC ¶ 43.)

The Free Exercise Clause protects religious freedom in several ways.  "First, th[e] clause prohibits the government from deliberately placing restrictions on religious faith and acts." *Rutherford v. Westchester County*, No. 18-CV-4872, 2020 WL 433841, at *5 (S.D.N.Y. Jan. 28, 2020) (citing inter alia *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993) ("[A] law targeting religious beliefs as such is never permissible[.]" (citations omitted))).  Second, the Free Exercise Clause prohibits disparate government treatment on the basis of religious status or belief.  *See Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 584 U.S. 617, 638 (2018) (explaining that state officials are "obliged under the Free Exercise Clause to proceed in a manner neutral toward and tolerant of [Plaintiff's] religious beliefs").  Third, in limited circumstances, the Free Exercise Clause (perhaps in combination with statutory protections) guarantees reasonable accommodations to sincere religious practitioners.  *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010) ("[T]he right at issue here is [Plaintiff's] right under the First Amendment and RLUIPA to a religious exemption from [a Department of Corrections medical test] Policy.")  And fourth, the Free Exercise Clause, like the other clauses of the First Amendment, prohibits governments from retaliating against those who exercise their Free Exercise rights.  *See Holland v. Goord*, 758 F.3d 215, 225–26 (2d Cir. 2014) (discussing First Amendment retaliation claims generally); *see also Washington v. Chaboty*, No. 09-CV-9199,

2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (recognizing a Free Exercise retaliation claim).

The Free Exercise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Ferrelli v. Unified Ct. Sys.*, No. 22-CV-0068, 2022 WL 673863, at *5 (N.D.N.Y. Mar. 7, 2022) (quoting *Cent. Rabbinical Cong. of U.S. & Canada v. N.Y.C. Dep't of Health & Mental Hygiene*, 763 F.3d 183, 193 (2d Cir. 2014)). "[A] law that incidentally burdens religious exercise is constitutional when it (1) is neutral and generally applicable and (2) satisfies rational basis review." *We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023). "If the law is not neutral or not generally applicable, it is subject to strict scrutiny, and the burden shifts to the government to establish that the law is narrowly tailored to advance a compelling government interest." *Id.*

Plaintiff alleges in a conclusory fashion and without support that the mandate was "adopted with a discriminatory intent and applied with discriminatory effect . . . [or] enforced in a discriminatory manner." (SAC ¶ 43.) In effect, this is an allegation that the mandate is not neutral. "To fail the neutrality prong, it is not enough for a law to simply affect religious practice; the law or the process of its enactment must demonstrate 'hostility 'to religion.'" *We The Patriots*, 76 F.4th at 145 (italics omitted). Here, the mandate is neutral because "it applies to all judges and employees of the state court system, and in no way singles out those who decline vaccination on religious grounds." *Mora*, 2023 WL 6126486, at *11–12 (alteration omitted) (considering the same vaccine mandate). In fact, the mandate's religious exemption provision "goes beyond what the Constitution requires," *Collins v. City Univ. of N.Y.*, No. 21-CV-9544,

13

2023 WL 1818547, at *8 (S.D.N.Y. Feb. 8, 2023) (citation omitted), and demonstrates a lack of hostility to religion, *see Mora*, 2023 WL 6126486, at *11.

The mandate is also generally applicable, as it requires employees to complete an application including a personal statement form and affidavit of religious objection. (*See* SAC ¶ 12.) These forms do "not presuppose the illegitimacy of plaintiff's articulated religious beliefs, but merely [seek] to determine whether such concerns are the applicant's true motivation for seeking an exemption." *Mora*, 2023 WL 6126486, at *11 (quotation marks omitted) (citing *Ferrelli*, 2022 WL 673863, at *8). Plaintiff has not pleaded that the mandate provided "a mechanism for individualized exemptions or prohibited religious conduct while permitting comparable secular conduct," *id.* at *12, or that UCS "favored some religious beliefs over others," *Ferrelli*, 2022 WL 673863, at *8. Accordingly, the mandate is neutral and generally applicable, and is subject to rational basis review, "a level of scrutiny it easily passes." *Mora*, 2023 WL 6126486, at *12. Federal and state courts have repeatedly held that UCS' vaccine mandate passes rational basis review. *See id.* at *11–12 (dismissing a Free Exercise claim, among others, brought by a New York judge who was denied a religious exemption to UCS' vaccine mandate); *Ferrelli*, 2022 WL 673863, at *5–8 (declining to preliminary enjoin the UCS vaccine mandate for violating the Free Exercise Clause); *Brignall v. New York State Unified Ct. Sys.*, No. E2022-0241CV, 2022 WL 17543641, at *5–9 (N.Y. Sup. Ct. Apr. 13, 2022) (same). "Rational basis review requires only that Defendants have chosen a 'means for addressing a legitimate goal that is rationally related to achieving that goal.'" *Ferrelli*, 2022 WL 673863, at *6 (quoting *Kane v. DeBlasio*, 19 F.4th 152, 160 (2d Cir. 2021)). "[I]mplementing the [vaccine mandate] for all judicial and non-judicial UCS employees is rationally related to achieving the

goal of protecting the safety and health of UCS employees and the public, as well as maintaining an accessible forum for the administration of justice." *Brignall*, 2022 WL 17543641, at *8.

The Court notes that Plaintiff's Free Exercise claim also fails for the separate reason that Plaintiff failed to comply with UCS' exemption process. Plaintiff concedes that she was prompted to provide additional information, but she does not plead that she provided that information. (*See* SAC ¶¶ 16–19; *see generally* Pl's Suppl. Form (demonstrating Plaintiff's willful noncompliance with UCS' exemption process).) It is true that "regulations that are hostile to the religious beliefs of affected citizens" are not neutral. *See Kane*, 19 F.4th at 168. Here, however, Plaintiff was denied an exemption because she "fail[ed] to adequately articulate [her] individual circumstances, as the [UCS exemption process] requires." *Troogstad v. City of Chicago*, 571 F. Supp. 3d 901, 917 (N.D. Ill. 2021) (declining to enjoin a vaccine mandate and holding that plaintiffs were unlikely to succeed on their Free Exercise claim where their religious exemption requests were denied on procedural grounds) *aff'd*, 47 F.4th 587 (7th Cir. 2022). To the extent Plaintiff argues that "the use of the supplemental form itself was not neutral," the Court finds that Plaintiff's failure to comply with UCS' exemption procedure precludes her from establishing that UCS' exemption policy burdens some religions over others, or religious employees over non-religious employees. *See Ferrelli*, 2022 WL 673863, at *8 (finding an argument that UCS' supplemental form was not neutral to be "unpersuasive" because the form "merely seeks to determine whether [concerns about use of fetal cell lines] are the applicant's true motivation for seeking an exemption" and, "[a]s such, does not undermine the neutrality of the [UCS] exemption process"); *see also Troogstad*, 571 F. Supp. 3d at 917 (finding that denial of plaintiffs' religious exemption requests did not raise free exercise concerns because all

plaintiffs were denied due to failure to comply with the basic requirements of the religious exemption process). Accordingly, Plaintiff's Free Exercise claim is dismissed.[4]

2. Equal Protection Claim

Plaintiff's Second Amended Complaint alleges a violation of the Equal Protection Clause for failure to grant her a religious exemption to UCS' vaccine mandate under two theories: selective enforcement and class-of-one. (*See* SAC ¶¶ 44–49.) Plaintiff asserts that "[n]o rational person could regard the circumstances of Glover to differ from those of Judge Jenny Rivera, and others granted religious exemptions, to a degree that would justify the differential treatment on the basis of a legitimate governmental policy." (*Id.* ¶ 45.) Plaintiff further asserts that denial of her exemption request amounts to "selective treatment [that] was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure her." (*Id.* ¶ 48.) Individual Defendants argue that Plaintiff has failed to sufficiently plead she was treated differently from a similarly situated individual and that class-of-one theories are inapplicable in public employment contexts. (*See* Indiv. Defs' Mem. 17–21.) Individual Defendants are correct that "[t]he class-of-one theory of equal protection does not apply in the public employment context." *Mora*, 2023 WL 6126486, at *14 n.14 (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 598 (2008)); *see also Appel v. Spiridon*, 531 F.3d 138, 139 (2d Cir. 2008) (noting that *Engquist* stands for the proposition that "the Equal Protection Clause does not apply to a public employee asserting a violation of the Clause based on a 'class of one'

---

[4] Because the Court finds that Plaintiff's Free Exercise claim fails as a matter of law, it declines to address Defendants' arguments that they are not subject to liability under 42 U.S.C. § 1983.

theory of liability"); *Whitfield v. City of New York*, --- F. Supp. 3d. ----, 2024 WL 5202698, at *8

(S.D.N.Y. Dec. 23, 2024) (same).  Therefore, the Court addresses only Plaintiff's Equal

Protection selective enforcement claim.

In the context of both selective enforcement or class-of-one theories, plaintiffs must show

that they were treated differently from another similarly situated comparators.  *See Kirton v.*

*Doe*, No. 20-CV-10860, 2023 WL 2586279, at *6 (S.D.N.Y. Mar. 21, 2023) (citing *Hu*, 927 F.3d

at 93).  To prevail on an equal protection claim based on selective enforcement of the law, a

plaintiff must prove that:

> (1) the person, compared with others similarly situated, was selectively treated, and
> (2) the selective treatment was motivated by an intention to discriminate on the
> basis of impermissible considerations, such as race or religion, to punish or inhibit
> the exercise of constitutional rights, or by a malicious or bad faith intent to injure
> the person.

*Hu*, 927 F.3d at 91 (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)).

Selective enforcement claims "merely require[] a 'reasonably close resemblance' between a

plaintiff's and comparator's circumstances."  *Id.* at 93.

Although the question of "whether two comparators 'are similarly situated is [generally]

a factual issue that should be submitted to the jury[,]'" *Marom v. Town of Greenburgh*, No. 18-

CV-7637, 2020 WL 978514, at *6 (S.D.N.Y. Feb. 28, 2020) (alteration in original) (quoting

*LTTR Home Care, LLC v. City of Mount Vernon Indus. Dev. Agency*, No. 17-CV-9885, 2019 WL

4274375, at *12 (S.D.N.Y. Sept. 10, 2019)), on a Rule 12(b)(6) motion the Court "must

determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury

could ultimately determine that the comparators are similarly situated," *Williams v. Novoa*,

No. 19-CV-11545, 2021 WL 431445, at *9 (S.D.N.Y. Feb. 5, 2021) (citation omitted).  Thus,

"[w]ell-pled facts showing that the plaintiff has been treated differently from others similarly

situated, remains an essential component of such a claim [and] [c]onclusory allegations of

selective treatment are insufficient to state an equal protection claim." *Bishop v. Best Buy, Co.*, No. 08-CV-8427, 2010 WL 4159566, at *11 (S.D.N.Y. Oct. 13, 2010) (citations and quotation marks omitted); *see also Rosario v. Town of Mount Kisco*, No. 16-CV-8766, 2020 WL 764280, at *6 (S.D.N.Y. Feb. 14, 2020) ("[I]t is . . . incumbent upon a [p]laintiff to allege facts that would allow this Court to determine if it is plausible that a jury could determine that the alleged comparators are similarly situated and were treated differently." (citing *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 604 (S.D.N.Y. 2010) (noting that a selective enforcement claim requires "more than a bare allegation that other [comparators] were treated differently"))), *appeal withdrawn sub nom. Rosario v. Vill. of Mount Kisco*, No. 20-956, 2020 WL 3250485 (2d Cir. June 9, 2020).

Here, Plaintiff simply alleges that Judge Rivera was permitted to work remotely, while Plaintiff's request for an accommodation was denied, without providing any other details.  (*See* SAC ¶ 23.)  Plaintiff also makes passing reference to "others granted religious exemptions," without further detail.  (*Id.* ¶ 45.)  "Plaintiff's conclusory statements do not suffice to plausibly allege the comparators were similarly situated when [she] has not provided" any information whatsoever on the circumstances in which the comparators were granted exemptions or whether the comparators were, in fact, similarly situated.  *Kirton*, 2023 WL 2586279, at *7; *see also Williams v. Novoa*, No. 19-CV-11545, 2022 WL 161479, at *9–10 (S.D.N.Y. Jan. 18, 2022) (dismissing equal protection claim "[b]ecause the Court cannot conclude that these comparators bear a 'reasonably close resemblance' or have an 'extremely high' level of similarity[,]" when plaintiff's allegations were "conclusory and identifie[d] comparators in the abstract"); *Segreto v. Town of Islip*, No. 12-CV-1961, 2014 WL 737531, at *7–8 (E.D.N.Y. Feb. 24, 2014) (dismissing equal protection claim where the "[p]laintiffs merely allege[d] that others [were] allowed to get

permits, but it [wa]s unclear whether those properties ha[d] any circumstances similar to [the] [p]laintiffs"). Accordingly, Plaintiff's Equal Protection claim is dismissed.

### 3. Title VII

The Court now turns to Plaintiff's Title VII claims. As an initial matter, Individual Defendants argue that they are not liable for any Title VII claim for retaliation. (Indiv. Defs' Mem. 21.) Indeed, "Title VII does not provide for individual liability." *Edelman v. NYU Langone Health Sys.*, 708 F. Supp. 3d 409, 436 (S.D.N.Y. 2023) (quoting *Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 641 F. App'x 60, 62 (2d Cir. 2016) (summary order)); *Sakanovic v. Mishalanie*, No. 22-CV-359, 2022 WL 16755715, at *2 (N.D.N.Y. Apr. 25, 2022) (collecting cases), *report and recommendation adopted*, 2022 WL 6926959 (N.D.N.Y. Oct. 12, 2022). Accordingly, Plaintiff's Title VII claims are dismissed as against Individual Defendants. The Court addresses whether Plaintiff has sufficiently plead her Title VII claims as against UCS.

### a. Failure to Accommodate

"Title VII prohibits discrimination in employment on the basis of religion and requires employers to reasonably accommodate an employee's religion unless doing so would constitute an undue hardship." *Greenberg v. Visiting Nurse Servs. in Westchester, Inc.*, No. 23-CV-4252, 2024 WL 4252550, at *5 (S.D.N.Y. Sept. 19, 2024) (citing 42 U.S.C. § 2000e et seq.); *see also Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977) ("The intent and effect of [including religion in Title VII] was to make it an unlawful employment practice under [Section] 703(a)(1) for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees."). "To establish a prima facie case of religious discrimination for failure to accommodate, Plaintiff must show that (1) [s]he held a 'bona fide religious belief conflicting with an employment requirement';

(2) [s]he informed [her] employer of this belief; and (3) [s]he was 'disciplined for failure to comply with the conflicting employment requirement.'" *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 508 (S.D.N.Y. 2023) (italics omitted) (quoting *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)); *accord Pastor v. Mercy Med. Ctr.*, No. 22-CV-7847, 2024 WL 3029118, at *3 (E.D.N.Y. June 17, 2024); *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 435 (S.D.N.Y. 2023). "If the prima facie case is shown, 'the burden then shifts to the employer to show it could not accommodate the employees' religious beliefs without undue hardship.'" *Algarin*, 678 F. Supp. 3d at 508 (italics omitted) (quoting *Knight*, 275 F.3d at 167); *see also Cagle*, 680 F. Supp. 3d at 435 ("If the employee is able to make out a prima facie case, the burden shifts to the employer to show that it either offered the employee a reasonable accommodation or that doing so would cause an undue burden." (italics omitted) (citing *Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006))).

Drawing all reasonable inferences in Plaintiff's failure, she has failed to plead a prima facie case of religious discrimination for failure to accommodate. With respect to the first element—that she "held a bona fide religious belief conflicting with an employment requirement," *Algarin*, 678 F. Supp. 3d at 508 (quotation marks omitted)—she has asserted that she is a Christian who believes that she "cannot be vaccinated with a vaccine created from abortion-derived fetal cell lines, and each of the three COVID vaccines use such fetal cells," (Feb. 2022 Request at ECF 34). Plaintiff has also claimed, and Defendants do not dispute, that UCS had, at the relevant time, a "mandatory vaccination policy." (SAC ¶ 10.) "Thus, Plaintiff has satisfied the first element of a failure-to-accommodate claim." *Greenberg*, 2024 WL 4252550, at *6 (citing *Algarin*, 678 F. Supp. 3d at 508, and *Jackson v. N.Y. State Off. of Mental*

*Health – Pilgrim Psychiatric Ctr.*, No. 23-CV-4164, 2024 WL 1908533, at *6 (E.D.N.Y. May 1, 2024)).

As to the second factor, "[a]n employer need have 'only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements.'" *Hickey v. State Univ. of N.Y. at Stony Brook Hosp.*, No. 10-CV-1282, 2012 WL 3064170, at *7 (E.D.N.Y. July 27, 2012) (quoting *Brown v. Polk Cnty., Iowa*, 61 F.3d 650, 654 (8th Cir. 1995)); *see also Bergin v. New York State Unified Ct. Sys.*, No. 22-CV-5264, 2024 WL 4444434, at *3 (E.D.N.Y. Oct. 8, 2024) (same); *Adams v. New York State Unified Ct. Sys.*, No. 22-CV-9739, 2023 WL 5003593, at *2 (S.D.N.Y. Aug. 4, 2023) (same). Plaintiff contends that she met this factor by informing UCS simply that she "trust[s] with faith [her] God-given immunity" and that her "religious convictions are against the vaccine." (*See* Pl's Original Obj 3.) UCS argues that Plaintiff "did not inform UCS of her alleged religious beliefs in either her original exemption request or her follow-up submission, instead relying on general statements that she had sincerely-held beliefs against the COVID-19 vaccine." (UCS Mem. 12–13.) Plaintiff's original objection, however, was insufficient to "permit [UCS] to understand the existence of a conflict between [Plaintiff's] religious practices and [UCS' vaccine mandate]." *Bergin*, 2024 WL 4444434, at *3. To wit, UCS notified Plaintiff that her original objection was insufficient and asked her for additional information via a supplemental form. (*See* SAC ¶ 18.) In response, Plaintiff "object[ed] to the questioning of [her] protected health information," provided a screenshot of a positive COVID-19 antibody test, and sent back the supplemental form with a few lines highlighted and whole pages simply crossed out. (*See generally* Pl's Suppl. Form.) Plaintiff's response is particularly deficient in comparison to the type of response that other courts have

found sufficient to inform an employer of an employee's religious objection to a vaccine policy: a "religious accommodation form with a two-page letter that *details* religious objections to a COVID-19 vaccination requirement." *Bergin*, 2024 WL 4444434, at *3 (emphasis added); *Jackson*, 2024 WL 1908533, at *6 (same). The court's decision in *Adams* is instructive; there, the plaintiff, a court clerk in the Civil Division of the New York State Supreme Court, brought a failure to accommodate claim. 2023 WL 5003593, at *1. The plaintiff submitted an initial exemption application that "advised that vaccination was contrary to her sincerely held religious beliefs and practices" and attached a "form letter" that "invoked the Christian worldview regarding intrusions into the human body." *Id.* at *2 (internal quotation marks omitted). In her supplemental form, the plaintiff "explicitly stated she had abstained from vaccines because, as a Christian, she puts her faith in God to heal her, [and] cit[ed] three passages from Christian Scripture." *Id.* (alterations adopted) (internal quotation marks omitted). The *Adams* court found this "more than enough to satisfy the second prong of the prima facie test." *Id.* (italics omitted). Here, UCS afforded Plaintiff the same opportunity given to the plaintiff in *Adams*, but instead of elaborating on her religious beliefs, Plaintiff simply refused to provide any further details. It is of no moment that Plaintiff belatedly provided more background on her religious belief in the form of her request for reconsideration. (*See generally* Pl's Feb. 2022 Request.) In the context of her failure to accommodate claim, Plaintiff's initial noncompliance cannot be saved by pointing to an attempt to engage in process only upon the denial of her request. *See Perez v. N.Y. Presbyterian/Weill Cornell Med. Ctr.*, No. 23-CV-6152, 2024 WL 1514216, at *9 (S.D.N.Y. Apr. 8, 2024) (holding that plaintiff "may not recover on a failure to accommodate claim" where "the allegations in the [c]omplaint indicate that [p]laintiff was responsible for the breakdown of the interactive process"); *Durick v. New York City Dep't of Educ.*, 202 F. Supp. 3d 277, 290

(E.D.N.Y. 2016) (noting that "Plaintiff cannot unreasonably discontinue a process through which she could have been accommodated and then use the abandoned request as the basis for a failure to accommodate claim" in a situation where, during the interactive process, the plaintiff "abandoned [her] request by failing to attend the medical examination [which was part of the interactive process] and instead choosing to retire two days later").  Accordingly, the Court finds that Plaintiff has failed to make the requisite showing under the second factor of her prima facie case.

### b.  Retaliation

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against any of [its] employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).  In other words, "Title VII forbids an employer to retaliate against an employee for . . . complaining of employment discrimination prohibited by Title VII."  *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 205 (2d Cir. 2006).  Courts analyze claims for retaliation pursuant to Title VII under the familiar and straightforward framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("Federal and state law retaliation claims are reviewed under the burden-shifting approach of *McDonnell Douglas*[.]").  "Under the first step of the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case of retaliation[.]"  *Id.* at 844 (citation omitted).  "Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, non[-]discriminatory reason existed for its action."  *Summa v. Hofstra*, 708 F.3d 115, 125 (2d Cir. 2013) (quoting *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001)).  "If the employer demonstrates a legitimate, non-

discriminatory reason, then the burden shifts back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 117 (S.D.N.Y. 2022) (quotation marks and citation omitted). "Significantly, a plaintiff alleging retaliation in violation of Title VII must show at the final step of the analysis that retaliation was a 'but-for' cause of the adverse action, not simply a 'substantial' or 'motivating' factor in the employer's decision." *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016) (citation omitted). "The employee at all times bears the burden of persuasion to show retaliatory motive." *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014) (citation omitted). "As with other claims analyzed under the *McDonnell Douglas* framework, the allegations [in the operative complaint] need only give plausible support to the reduced prima facie requirements." *Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *20 (E.D.N.Y. Sept. 21, 2015), (alterations adopted) (quotation marks, and citation omitted).

To plausibly plead a prima facie case of retaliation, a plaintiff must establish that: "(1) she was engaged in protected activity, (2) the alleged retaliator knew that plaintiff was involved in protected activity, (3) an adverse decision or course of action was taken against plaintiff and (4) a causal connection exists between the protected activity and the adverse action." *Medina v. AAM 15 Mgmt. LLC*, 750 F. Supp. 3d 332, 344 (S.D.N.Y. 2024) (quoting *Atherley v. N.Y.C. Dep't of Educ.*, No. 23-CV-383, 2024 WL 1345741, at *11 (S.D.N.Y. Mar. 29, 2024) (quotation marks and citation omitted)); *see also Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (same). Crucially, "[a] plaintiff's burden at this prima facie stage is de minimis." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (italics omitted); *see also Kirkland-Hudson*, 665 F. Supp. 3d at 459.

UCS asserts that Plaintiff did not engage in a protected activity, that there was no adverse

action, and that there was no causal connection. (*See* UCS Mem. 13–16.) Plaintiff does not

respond in Opposition. (*See generally* Pl's Opp.) Where a plaintiff fails to respond to a

defendant's argument, the claim is abandoned. *See Matos*, 750 F. Supp. 3d 307, 326–27; *see*

*also Laface*, 2019 WL 1959489, at *8 ("In the Second Circuit, a plaintiff's failure to respond to

contentions raised in a motion to dismiss constitute[s] an abandonment of those claims."

(alteration and quotation marks omitted) (collecting cases)). The Court, however, will exercise

its discretion and evaluate whether Plaintiff has met her prima facie burden. As detailed below,

she has not.

<u>i. Protected Activity</u>

"[A] plaintiff engages in 'protected activity' when she (1) opposes employment practices

prohibited under Title VII; (2) makes a charge of discrimination; or (3) participates in an

investigation, proceeding or hearing arising under Title VII." *Jacobs v. Hudson Valley Fam.*

*Physicians, PLLC*, 725 F. Supp. 3d 235, 247 (N.D.N.Y. 2024) (quoting *Davis v. NYS Dep't of*

*Corr. Attica Corr. Facility*, 110 F.Supp.3d 458, 462 (W.D.N.Y. 2015)). Protected activities can

also include "'informal protests of discriminatory employment practices, including making

complaints to management' provided that they are 'sufficiently specific to make it clear that the

employee is complaining about conduct prohibited by Title VII.'" *Arkorful v. N.Y.C. Dep't of*

*Educ.*, 712 F. Supp. 3d 336, 356 (E.D.N.Y. Jan. 24, 2024) (quoting *Risco v. McHugh*, 868 F.

Supp. 2d 75, 110 (S.D.N.Y. 2012)).

Reading the pleadings to "raise the strongest arguments [they] suggest[]," *Barton v. Ne.*

*Transp., Inc.*, No. 21-CV-326, 2022 WL 203593, at *4 (S.D.N.Y. Jan. 24, 2022) (quoting *Sykes*

*v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted)), Plaintiff alleges

she was retaliated against for applying for requesting a reasonable accommodation on September 27, 2021, and for her July 2022 EEOC complaint, (*see* SAC ¶¶ 51–52; *see also* EEOC Charge 1–2). Filing an EEOC charge is clearly a protected activity, *see Medina*, 750 F. Supp. 3d at 340 (noting that "the caselaw is clear that plaintiffs engage in protected activity when they file external discrimination complaints against their employer" and collecting cases (alterations adopted) (quoting *Lopez v. White Plains Hosp.*, No. 19-CV-6263, 2022 WL 1004188, at *13 (S.D.N.Y. Mar. 30, 2022))), as is a request for reasonable accommodation, *see Jenkins v. N.Y.C. Transit Auth.*, 646 F. Supp. 2d 464, 473 (S.D.N.Y. 2009) (holding that "a claim for retaliation can be based upon a request for reasonable accommodation" (citing *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002))); *see also Medina*, 750 F. Supp. 3d at 348–49 (noting that requests for reasonable accommodation can constitute a protected activity in Title VII retaliation claims).

Plaintiff has alleged that UCS was aware of her requests for reasonable accommodation—indeed, UCS received and responded to the request. (*See* SAC ¶ 18.) Plaintiff does not specifically allege, nor does UCS dispute, that UCS was unaware of Plaintiff's EEOC charge. (*See generally* UCS Mem.; Pl's Opp.) The Court finds that Plaintiff has met the first two factors of her prima facie case.

### ii. Adverse Employment Action

Plaintiff further alleges that the adverse decision or course of action she experienced include "unfair work assignments," (SAC ¶ 29), being "shunned from a special overtime assignment as recently as June 21, 2022," (*id.* ¶ 31), and:

> Additionally [Plaintiff] was placed in a matrimonial court part which has much heavier demands than the court part she been previously assigned to. Further when [Plaintiff] needs to take days off from work she returns to a work load that should

have been completed by others in her absence, causing work to pile up on her and precluding her from using her personal days as other similarly situated employees.

(*Id.* ¶ 30.)

While a heavy workload can constitute an adverse employment action, the plaintiff must sufficiently allege that it is a *disproportionately heavy* workload as compared to other similarly situated employees. *See Kirkland-Hudson*, 665 F. Supp. 3d at 460. Plaintiff's pleadings and briefing do not clearly allege that her workload was disproportionately heavy as compared to other employees. However, because the Court construes a pro se plaintiff's pleadings liberally, *see Hunte v. Rushmore Loan Mgmt. Servs., LLC*, No. 22-CV-2169, 2024 WL 1076683, at *3 (S.D.N.Y. Mar. 11, 2024), it finds that Plaintiff has implicitly, and sufficiently, pled that she was assigned a disproportionately heavy workload as compared to other employees who did not request a religious exemption to UCS' vaccine mandate.

### iii. Causal Connection

Defendant argues that Plaintiff has failed to establish a causal connection between her request for accommodation and EEOC charge and any alleged adverse employment action. (*See* UCS Mem. 14–15.) The Court agrees.

With respect to the causation element for a claim of retaliation, "a plaintiff must plausibly plead a connection between the act and [her] engagement in protected activity." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). A plaintiff can demonstrate the causal connection in one of two ways: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *see also Kirkland-Hudson*, 665 F.

Supp. 3d at 462 (same).  Further, "a plaintiff must plausibly allege that retaliation was a but-for cause of the employer's adverse action."  *Medina*, 750 F. Supp. 3d at 353 (alteration adopted) (quotation marks omitted) (quoting *Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 572 (S.D.N.Y. 2023)).

Plaintiff's request for a reasonable accommodation in September 2021, (*see* SAC ¶¶ 51–52), cannot support a retaliation claim because it is too distant in time from the alleged adverse employment actions that began around April 2022, (*see id.* ¶¶ 29–30).  *See Newton v. LVMH Moet Hennessy Louis Vuitton Inc.*, 746 F. Supp. 3d 135, 158 (S.D.N.Y. 2024) (finding that a nine-month gap was too long to "permit[] an indirect inference of retaliatory intent or causation"); *Ball v. Marriott Int'l, Inc.*, 627 F. Supp. 3d 296, 323 (S.D.N.Y. 2022) (finding that a gap of nine to ten months "is too long to support a prima facie showing that there was a causal connection between the complaint and the allegedly retaliatory action" (italics omitted)).

However, the four-month gap between Plaintiff's EEOC charge in July 2022, (*see* EEOC Charge 1–2), and April 2022 is sufficient to support a claim for retaliation, *see Lee v. Riverbay Corp.*, --- F. Supp. 3d ----, 2024 WL 4312166, at *10 (S.D.N.Y. Sept. 27, 2024) ("The four-month gap . . . is within the range of temporal proximity that courts have found sufficient to support a claim for retaliation."); *DeFranco v. N.Y. Power Auth.*, 731 F. Supp. 3d 479, 495 (W.D.N.Y. 2024) (finding a four month gap as "creat[ing] a plausible inference of retaliation" (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010)).  That being said, the Court notes that an adverse employment action that precedes the protected activity cannot support a retaliation claim.  *See Forrest v. N.Y.C. Hous. Auth.*, No. 22-CV-6480, 2023 WL 3203646, at *10 (S.D.N.Y. May 2, 2023) (noting at summary judgment that an adverse employment action cannot precede a protected activity in a retaliation claim); *Darwin v.*

*Newburgh Operations, LLC*, No. 22-CV-872, 2025 WL 104140, at *6 (S.D.N.Y. Jan. 15, 2025)

("It is well-settled that an adverse employment action cannot serve as the basis for a retaliation

claim if the action was set in motion between a plaintiff engaged in [the] protected activity."

(citation omitted)).  Here, Plaintiff's EEOC charge describes "unfair work assignments," being

"shunned from a special overtime assignment as recently as June 21[], 2022," and being "placed

in a matrimonial part which has much heavier demands than the court part [she] was previously

assigned to."  (*See* EEOC Charge 2.)  These are precisely the alleged adverse employment

actions that Plaintiff describes in the Second Amended Complaint.  (*See* SAC ¶¶ 29–31.)  The

fact that the adverse employment actions were described in the EEOC charge necessarily

indicates that the actions preceded the filing of the charge.  Because the adverse employment

actions precede the protected activity, Plaintiff has failed to make a prima facie case of

retaliation and this claim must be dismissed.  *See Perez*, 2024 WL 1514216, at *9 (dismissing

plaintiff's ADA retaliation claim because plaintiff "[did] not allege any adverse action, let alone

that any such action was intended to retaliate for protected activity"); *Brown v. United Parcel

Serv.*, No. 22-CV-762, 2022 WL 17478335, at *7 (N.D.N.Y. Oct. 12, 2022) (collecting cases

where courts dismiss a retaliation claim because the adverse employment action preceded the

protected activity), *report and recommendation adopted*, 2022 WL 16734876 (N.D.N.Y. Nov. 7,

2022).

     4.  Leave to Amend

     Plaintiff argues that, in the alternative to the Court crediting its Opposition, that her

Second Amended Complaint be dismissed with leave to amend or "replead."  (*See* Pl's Opp. 3.)

Defendants argue that any amendment would be futile and seek dismissal with prejudice.  (*See*

UCS Reply 1; Indiv. Defs' Reply 4–10.)

"Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Corines v. Cnty. of Westchester, New York*, No. 22-CV-5179, 2024 WL 1257093, at *11 (S.D.N.Y. Mar. 25, 2024) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted)). "A pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen*, 746 F.3d at 62 (internal quotation marks omitted). The decision of whether to grant or deny leave to amend is, however, governed by the "sound discretion of the district court," such that the district court may deny leave "for good reason, including futility." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *see also Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006) (noting that "leave to amend a complaint may be denied when amendment would be futile").

The Court has already granted leave to amend once. (*See* Dkt. No. 29.) Plaintiff appends her proposed Third Amended Complaint to her Opposition, and requests leave to file it. (*See* Pl's Opp. 5.) In order to determine whether filing an amended complaint would be futile, it is necessary to consider whether the Third Amended Complaint addresses the defects that the Court identified above. "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6)." *Lin v. Toyo Food, Inc.*, No. 12-CV-7392, 2016 WL 4502040, at *4 (S.D.N.Y. Aug. 26, 2016) (quoting *Panther Partners Inc. v. Ikanos Comm'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)); *see also IBEW Local Union No. 58 Pension Tr. Fund and Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) ("[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss."). Accordingly, "[i]n assessing whether the

30

proposed complaint states a claim, [a court] consider[s] the proposed amendments along with the remainder of the complaint, accept[s] as true all non-conclusory factual allegations therein, and draw[s] all reasonable inferences in [the] plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement of relief." *Panther Partners*, 681 F.3d at 119 (alterations, citation, and internal quotation marks omitted) (citing *Iqbal*, 556 U.S. at 678–80).

With respect to Plaintiff's Free Exercise Claim, the Court has examined the Third Amended Complaint and finds no additional allegations that are relevant to this claim. Further, the defects identified are not the kind that can be addressed with additional pleading—rather, they are defects in Plaintiff's legal argument that amendment cannot save. Specifically, the Third Amended Complaint does not, and indeed cannot, include any additional allegations that give the Court reason to believe that Plaintiff could establish that the UCS vaccine mandate is not neutral or generally applicable, such that it would be subject to strict scrutiny review and it does not, and cannot, change the fact that Plaintiff failed to comply with UCS' exemption procedure, thereby precluding her from establishing that it violates the Free Exercise Clause. *See supra* Section II.B.1; *cf. Barkai v. Nuendorf*, No. 21-CV-4060, 2022 WL 268100, at *3 (S.D.N.Y. Jan. 27, 2022) (finding amendment futile where the plaintiff's allegations could not, as a matter of law, establish liability for a third-party that plaintiff sought to add as a defendant). With respect to Plaintiff's Equal Protection Claim, Plaintiff does make slightly different allegations with respect to similarly situated comparators, that "other court employees were granted permission to work remotely," (TAC ¶ 22), and that:

> another Senior Clerk was allowed to work remotely and continues to do so, and perhaps most notably, Judge Jenny Rivera, an Associate Judge of the New York Court of Appeals, worked remotely for a lengthy period after the vaccine mandate, and returned in person, upon information and belief, once the vaccination requirement was lifted.

(*Id.* ¶ 23.)  This does not move the needle—the Third Amended Complaint still contains only conclusory allegations that do not plausibly allege that comparators were similarly situated. With respect to Plaintiff's Title VII failure to accommodate claim, the Court again finds no additional relevant allegations that change or address its analysis.  As discussed above, Plaintiff's claim fails because she did not plausibly allege facts to carry her prima facie burden.  *See* supra Section II.B.3.a.  Finally, with respect to Plaintiff's Title VII retaliation claim, again, the Third Amended Complaint contains no additional allegations.

Because the Third Amended Complaint fails to, or indeed cannot, address the deficiencies the Court identified above, "dismissal with prejudice is appropriate."  *Corines*, 2024 WL 1257093, at *11 (citation omitted); *see also Cook v. Dewitt*, No. 19-CV-2780, 2022 WL 580774, at *4 (S.D.N.Y. Feb. 25, 2022) (dismissing pro se amended complaint with prejudice); *Tsinberg v. New York*, No. 20-CV-749, 2021 WL 1146942, at *12 (S.D.N.Y. Mar. 25, 2021) (dismissing pro se plaintiff's claims with prejudice and without leave to amend where he "already had one opportunity to amend"); *Adams-Flores v. City of New York*, No. 18-CV-12150, 2021 WL 918041, at *5 (S.D.N.Y. Mar. 10, 2021) (denying pro se plaintiff leave to amend a second time); *Coon v. Benson*, No. 09-CV-230, 2010 WL 769226, at *4 (S.D.N.Y. Mar. 8, 2010) (same) (adopting report and recommendation in full).

In Plaintiff's pre-motion letter, she claimed that the Third Amended Complaint would "narrow the Title VII claims in this [A]ction to failure to accommodate and retaliation claims" and "limit the claims against the [I]ndidvidual [D]efendants."  (Dkt. No. 70 at 1.)  The latter is somewhat true, but the former is not.  The Court notes that Plaintiff raises several new claims in the Third Amended Complaint:  a Title VII hostile work environment claim, (*see* TAC ¶¶ 76–79), a "procedural and substantive due process claim," (*see id.* ¶¶ 87–92), and discrimination and

retaliation claims under New York State Human Rights Law and New York City Human Rights Law, (*see id.* ¶¶ 93–102).  UCS does not address these new claims, (*see generally* UCS Reply), while Individual Defendants again correctly assert that they are not liable under Title VII, (*see* Indiv. Defs' Reply 5), and argue that the Eleventh Amendment bars liability against Individual Defendants in their official capacities, (*see id.* 5–6).  The Court addresses whether these new claims would be futile.

> a.  Title VII Hostile Work Environment

The Court finds that Plaintiff has failed to exhaust her hostile work environment claim. "A hostile work environment exists 'when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Kirkland-Hudson*, 665 F. Supp. 3d at 439 n.1 (alteration adopted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  To give the EEOC adequate notice of a hostile work environment claim, the EEOC charge must reference "'repeated conduct or the cumulative effect of individual acts' directed toward the plaintiff." *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 437 (2010) (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008) (holding hostile work environment claim not reasonably related to discrimination claim filed with the EEOC because plaintiff's "EEO complaint recount[ed] nothing more than a single act of physical and verbal abuse" and therefore contained "no reference to repeated conduct or the cumulative effect of individual acts")).

Plaintiff's EEOC charge contains no reference to repeated conduct or the cumulative effect of individual acts.  (*See* EEOC Charge at 1–2.)  Instead, the charge references only "rude comments and unfair work assignments," (*id.* at 2), does not refer to "systemic discrimination,"

33

*Pilgrim v. McGraw–Hill Cos., Inc.*, 599 F. Supp. 2d 462, 491 (S.D.N.Y. 2009), and makes only general allegations, which mean that her hostile work environment claim cannot be considered reasonably related to the discrimination charge filed with the EEOC, *see Lester v. Mount Pleasant Cottage Sch. Union Free Sch. Dist.*, No. 19-CV-5247, 2020 WL 3618969, at *6 (S.D.N.Y. July 2, 2020) (holding plaintiff barred from bringing hostile work environment claim where he "offered no factual allegations in his NYSDHR Complaint to suggest that harassment based on his disability was occurring," and "made no mention of any demeaning comment or gesture at all, much less repeated conduct" (quotation marks and citation omitted)); *Fleming v. Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 464 (S.D.N.Y. 2005) (holding hostile work environment claim not reasonably related to EEOC charge because EEOC charge only made general allegations regarding employer's disparate treatment of men and women); *cf. Kirkland-Hudson*, 665 F. Supp. 3d at 439 n.1 (holding hostile work environment claim reasonably related to EEOC charge because the charge "allege[d] repeated conduct through a specific pattern of discrimination lasting for multiple years"); *Pilgrim*, 599 F. Supp. 2d at 491 (holding hostile work environment claim reasonably related to EEOC charge because charge referred to "systemic" discrimination and alleged that supervisor "demean[ed]" plaintiff with "foul and offensive" language). Accordingly, because Plaintiff failed to give the EEOC adequate notice of a hostile work environment claim, she has failed to exhaust her administrative remedies as they relate to this claim, and so the claim must be dismissed.

    b.  Procedural and Substantive Due Process

Plaintiff alleges that "Defendants' actions, including their refusal to allow or establish any review mechanism of the decisions denying religious exemption requests, deprived Plaintiff

34

of" protected interests, including her "right to bodily integrity, to be free of forced vaccination, to continued employment, . . . and to religious freedom." (*See* TAC ¶¶ 88–89.)

The Court finds helpful the analysis in a recent case, *Evans v. New York City Health and Hospitals Corp.*, No. 21-CV-10378, 2023 WL 5920189 (S.D.N.Y. Aug. 7, 2023), *report and recommendation adopted*, 2023 WL 5561145 (S.D.N.Y. Aug. 29, 2023). There, the plaintiff, a former nurse, alleged that the defendant's vaccine mandate violated "her liberty interest in her bodily integrity." *Id.* at *5. The *Evans* court held that "[b]oth the Second Circuit and the Supreme Court have consistently recognized that the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional." *Id.* (alteration adopted) (quoting *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir. 2021)). In finding that the plaintiff had not alleged a violation of a fundamental right, the court noted that the defendant's vaccine mandate did not force plaintiff to be vaccinated. *Id.* As discussed in *Evans*, Plaintiff had a choice to make, and was not forced, unreasonably or otherwise, to get vaccinated. Because the vaccine mandate clearly "does not violate an employee's fundamental rights under the Substantive Due Process Clause," this claim must be dismissed. *Id.* (citing *Norris v. Stanley*, 73 F.4th 431, 435–38 (6th Cir. 2023)).

Plaintiff also asserts that the vaccine mandate violated her procedural due process right as it relates to the absence of "any review mechanism of the decisions denying religious exemption requests." (TAC ¶ 89.) "A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process." *Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019). As discussed, Plaintiff did not have a fundamental right to refuse the vaccine

mandate, and therefore failed to allege the existence of a protected liberty interest in bodily

integrity. As such, Plaintiff's procedural due process claim fails as a matter of law as it relates to

her purported liberty interest. *See Belem v. Jaddou*, No. 21-CV-4093, 2022 WL 1664332, at *5

(S.D.N.Y. May 25, 2022) (rejecting procedural due process claim because the plaintiff failed to

identify a constitutionally protected liberty interest).

      Plaintiff also asserts a property interest in her continued employment. (*See* TAC ¶ 88.) It

is true that "a public employee subject to discharge only for cause . . . has a constitutionally

protected interest in [their] continued employment." *Marciano v. de Blasio*, 589 F. Supp. 3d

423, 435 (S.D.N.Y. 2022), *appeal dismissed sub nom. Marciano v. Adams*, No. 22-570-CV, 2023

WL 3477119 (2d Cir. May 16, 2023), *cert. denied*, 144 S. Ct. 286 (2023). However, Plaintiff has

not adequately alleged deprivation of that interest without constitutionally adequate process

because Plaintiff was not terminated. Plaintiff alleges that she was informed on March 22, 2022,

that, unless she was vaccinated by close of business on April 4, 2022, she would be terminated.

(SAC ¶ 25.) Plaintiff characterizes this as "effective[] termin[ation] by operation of law." (TAC

¶ 48.) The fact remains, however, that Plaintiff complied with the mandate and was vaccinated

on April 4, 2022. (*Id.* ¶ 53.) Again, "[b]oth the Second Circuit and the Supreme Court have

consistently recognized that the Constitution embodies no fundamental right that in and of itself

would render vaccine requirements imposed in the public interest, in the face of a public health

emergency, unconstitutional." *Hochul*, 17 F.4th at 293. Accordingly, "courts that have reviewed

. . . COVID-19 vaccine mandates have concluded that such vaccination requirements do not

violate the Fourteenth Amendment's Substantive Due Process Clause." *Evans*, 2023 WL

5920189, at *5 (collecting cases). Rather, "vaccine mandates [are simply] . . . a lawful condition

of employment." *Gonzalez v. City of New York*, No. 22-CV-3577, 2024 WL 1332546, at *7

(E.D.N.Y. Mar. 28, 2024) (citing *Garland v. N.Y.C. Fire Dep't*, 574 F. Supp. 3d 127 (E.D.N.Y. 2021), *aff'd*, No. 23-662, 2024 WL 445001 (2d Cir. Feb. 6, 2024)).  In concordance with these propositions, the Court has found no caselaw suggesting that an "effective termination" or the like constitute a deprivation under procedural due process.  Because Plaintiff cannot show that she was deprived of an interest, either liberty or property, without constitutionally adequate process, Plaintiff's Procedural Due Process claim must also be dismissed.

    c.  NYSHRL and NYCHRL Claims

    All that remain of Plaintiff's Third Amended Complaint are the NYSHRL and NYCHRL claims of discrimination and retaliation.  (*See* TAC ¶¶ 93–102.)  In light of the Court's dismissal of all federal claims in the Second and Third Complaints, it declines to exercise supplemental jurisdiction over the remaining state claims.  *See Lewis v. Pelham Country Club*, No. 23-CV-6500, 2024 WL 4275588, at *9 (S.D.N.Y. Sept. 24, 2024) ("Where a district court 'has dismissed all claims over which it has original jurisdiction,' it 'may decline to exercise supplemental jurisdiction' over any remaining claims." (quoting 28 U.S.C. § 1367(c)(3))).  Thus, Plaintiff's NYSHRL and NYCHRL claims are dismissed without prejudice.  *See id.* at *10; *see also Greenberg*, 2024 WL 4252550, at *11–12 (declining to exercise supplemental jurisdiction over NYSHRL claims after dismissing related Title VII claims).

IV.  Conclusion

For the reasons set forth above, it is hereby ordered that Defendants' Motions to Dismiss are granted with prejudice as to all federal claims.  The Court declines to exercise supplemental jurisdiction as to the state claims.  The Clerk of the Court is respectfully directed to terminate the pending Motions (Dkt. Nos. 55 , 58), and close this case.

SO ORDERED.

Dated:    March 26, 2025
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge

38